FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 3 0 2007

United States District Court
Atlanta, Georgia

Chappell   Plaintiff            ()

                                    October 24, 2007

Vs

                                ()    1 07-MI-0331

Wellstar Kennestone Hospital

Joseph Hormes and Edward Shaheen   ()

---

## Complaint

Comes Now Johnny L. Chappell temporary Pro se' file this timely lawsuit for malpractice against these defendants for fraud and for malpractice in this State Court of Georgia.

1. I was taken by ambulance to the Wellstar-Kennestone Hospital Emergency Room in Marietta, Georgia at approximately at 9:00 am on April 16, 2007.

2. I had pain in my lower back and weakness in my legs.

3.
4. I was seen by Dr. Edward Shaheen
5.
6. I was seen by Dr Edward Shaheen first and then by Dr. Joseph Hormes.

7. I was admitted and immediately taken down to have an MRI done on my lower back.

8. The doctors was more interested in my ability to pay the bill because of the extensive questions and forms that the asked for.

9. The doctor Hormes also ordered a lumbar spine MRI scans, a CAT Scan, a spinal Tap, And a Electro Cardiogram Exam.

10. Doctor Shaheen and Hormes said that the Results were all "negative" and that my injury was mental and not physical.

11. Dr. Joseph Hormes brought Psychiatrist Gregory Lunceford to examine my state of being. He agreed saying in the doctors report that I was malingering. He also said that I was faking my illness.

12. I was in extreme pain wanting pain medication because of my injury. I was given only one Percocet every four yours for the entire time that I was a patient under the care of Joseph Hormes. Joseph Hormes also said that the MRI and the other tests were negative.

13. We now can see from this same MRI that was read by the MAYO CLINIC that they were lying. (Exhibit 1)

14. Joseph Hormes prescribed vigorous exercises. Chair transfers that exacerbated the injury. I could still stand up and walk a little. I could raise my legs and I had control of my bowels.

15. On the 24th of April the therapist Donna Moss refused to get help to transfer me to a gurney saying" you don't tell me hoe to do my job". She put a harness on me and stood up and turned to sit me on the bed along with my limited help. She then released the harness and let me fall back sideways across the gurney stretching my back. I asked for her to please help me and put my legs on the gurney. She said" you can do it Johnny, one leg at a time". I asked her three times and she still stood there and did nothing. I could feel my back crunching. I hollered at her and then she finally completed the transfer and put my legs on the gurney. I was in extreme pain.

16. She wheeled me up to my room where I informed Joseph Hormes what had happened. I could not move any of my lower extremities after The Donna Moss event.

17. Joseph Hormes ordered another MRI to be performed right away.

18. Dr. Joseph Hormes said that this MRI was negative also.

19. My Exhibit 1 proves that on this day the MRI showed that the swelling in my spinal cord increased.

20. This was on a Thursday. I made arrangements for me to leave Wellstar- Kennestone Hospital and fly to Minneapolis to Abbott Northwest Hospital and the MAYO CLINIC in Rochester Minnesota.

21. DR. Schrontz arrived at the hospital immediately after I arrived on the 27th of April. Three hours after I left Wellstar- Kennestone Hospital.

22. He requested the MRI's from Wellstar. They said that they were lost and could not be found.

23. These MRI's was not sent to the MAYO for a year and three months.

24. These MRI's shows that they knew, should have known, that my spinal cord was injured on the 16th and again on the 25th of April.

25. Dr. Hormes released several doctors reports saying that they also looked at the MRI's and these several doctors agreed that they were negative.

26. Looking at the MRI's now proves that they were negligent in misdiagnosing my serious condition.

27. I am now a T2 paraplegic. The records show that these defendants were involved with plaintiff being misdiagnosed,

treatment and non-treatment of the plaintiff leaving him as he is.

28. Dr. Hormes reported that there was nothing wrong with my spinal cord and that all of the exams prove that nothing was wrong with me. We now see that that was false.

29. I am requesting that these defendants pay a sum of 5,000,000 dollars for them being responsible for me being a paraplegic.

30. I am asking for additional time for me to send an Expert Witness Affidavit stating that these doctors were guilty of Medical Malpractice.

31. Please note that on April 24, 2007 the Federal Appeals Court advised me to file this complain in State Court. Notice that this Statue of Limitations will not expire until October 25th or shortly afterwards, so I am within the legal parameters.

Sincerely

*[signature]*

Johnny L. Chappell

| | | |
|---|---|---|
| 6 151 895 CHAPPELL, Johnny | Mayo Clinic Results Summary | Page 1 (more) |

Report ID: ALL REPORTS & LABS
Terminal ID: W040048   Run Date/Time: 30Jul2004  4:35pm
Reporting period = 30Jun2004 thru 30Jul2004  Requested by: MRA9224

| | | | | |
|---|---|---|---|---|
| Age in years | : 52 | Date of Birth : 1952-03-03 | Gender | : M |
| Location | : | | | |

## LABORATORY

LAB AG
No Matching Data Found

## ECG

ECG Reports
No Matching Data Found



## MICROBIOLOGY

Microbiology by Specimen Source
No Matching Data Found

## RADIOLOGY

Radiology Reports

06Jul2004  3:12PM   Exam: OUTSIDE X-RAY
Indications:
ORIGINAL REPORT - 07 Jul 2004 12:28PM  GONDA
Non-contrast MRI thoracic and lumbar spine 4-16-03. Lumbar spine MRI
before and after IV gadolinium administration 4-25-03.  Moderate
marked compression fracture T8 vertebral body with associated
mild-moderate kyphosis is stable on Mayo 1-2-04 thoracolumbar spine
MRI.  Nearly completely continuous abnormal T2 signal central cord
thoracic spine through conus on 4-16-03 MRI with possible mild cord
thinning-atrophy.  Some possible thickening cauda equina-nerve roots
on this exam.  On the 4-25-03 lumbar spine MRI, the T2 signal in
visualized lower thoracic cord-conus appears to have increased with
developing abnormal anterior deflection-displacement conus.
Associated abnormal enhancement lower thoracic cord-conus and
thickened cauda equina nerve roots.  This has resolved on Mayo exam
with developing moderate-marked irregular atrophy-thinning lower
thoracic cord-conus.  Resolution of abnormal central cord T2 signal
remaining thoracic cord.  Findings may be due to resolving
inflammation-infection, post-traumatic changes, or unusual
infarct-vascular event.  Remainder negative.
(7-7-04) (339)
C. P. Wood MD.  4-6599

## PATHOLOGY

Pathology Reports
No Matching Data Found

## AUTONOMIC

Autonomic Lab Reports
No Matching Data Found

## EEG

EEG Reports
No Matching Data Found

## EMG

EMG Reports
No Matching Data Found

## MOVEMENT DISORDERS

Movement Disorders Reports
No Matching Data Found

## NEUROSENSORY (QST)

Neurosensory (QST) Reports
No Matching Data Found

## CATH

Cath Reports
No Matching Data Found

[left column — partially cut off at binding]

ts forth a claim for relief,
aim, counterclaim, a cross-
laim, shall contain:
lain statement of the claims
ader is entitled to relief; and
judgment for the relief to
ems himself entitled; provid-
actions for medical malprac-
is Code section, in which a
ted damages is made for
he pleadings shall contain a
nt in a sum certain; and, in
malpractice in which a claim
mages is made for a sum
), the demand for judgment
pleader "demands judgment
00," and no further monetary
ted. Relief in the alternative
nt types may be demanded.
e provisions of subparagraph
f this subsection are violated,
action is pending shall, upon
e the improper portion of the
and may impose such other
isciplinary action against the
ode Section 9-11-37 as are

denials. A party shall state in
his defenses to each claim
t or deny the averments upon
relies. If he is without know-
fficient to form a belief as to
nt, he shall so state, and this
l. Denials shall fairly meet the
ents denied. When a pleader
deny only a part or a qualifi-
shall specify so much of it as
hall deny only the remainder
nds in good faith to controvert
e preceding pleading, he may
specific denials of designated
hs, or he may generally deny
pt such designated averments
xpressly admits; but, when he
overt all its averments, he may
l subject to the obligations set
-11-11.

ses In pleading to a preceding
l set forth affirmatively acc...
ation and award, discharge,
toppel, failure of considera...
y by fellow servant, laches,
ase, res judicata, statute...
utations, and waiver. Whe...

party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleadings as if there had been a proper designation.

(d) *Effect of failure to deny.* Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

(e) *Pleading to be concise and direct, alternative statements.*

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2) A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them, if made independently, would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in Code Section 9-11-11.

(f) *Construction of pleadings.* All pleadings shall be so construed as to do substantial justice.

Laws 1966, p. 609, § 8; Laws 1967, p. 226, § 8; Laws 1976, p. 1047, § 1.

## § 9-11-9. Pleading special matters

(a) *Capacity.* It is not necessary to aver the capacity of a party to bring or defend an action, the authority of a party to bring or defend an action in a representative capacity, or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party, the capacity of any party to bring or defend an action, or the authority of a party to bring or defend an action in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

(b) *Fraud, mistake, condition of the mind.* In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

(c) *Conditions precedent.* In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of

performance or occurrence shall be made specifically and with particularity.

(d) *Official document or act.* In pleading an official document or official act it is sufficient to aver that the document was issued or the act done in compliance with law.

(e) *Judgment.* In pleading a judgment or decision of a domestic or foreign court, of a judicial or quasi-judicial tribunal, or of a board or officer, it is sufficient to aver the judgment or decision without setting forth matter showing jurisdiction to render it.

(f) *Time and place.* For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter.

(g) *Special damage.* When items of special damage are claimed, they shall be specifically stated.

Laws 1966, p. 609, § 9.

## § 9-11-9.1. Affidavit of expert to be filed with complaint in action for damages alleging professional malpractice

(a) In any action for damages alleging professional malpractice against a professional licensed by the State of Georgia and listed in subsection (d) of this Code section or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of Georgia and listed in subsection (d) of this Code section, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

(b) If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint is subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment pursuant to Code Section 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective. The trial court may, in the exercise of its discretion, extend the time for filing said amendment or response to the motion, or both, as it shall determine justice requires.

(c) If a plaintiff fails to file an affidavit as required by this Code section and the defendant raises the failure to file such an affidavit by motion to dismiss filed contemporaneously with its initial responsive pleading, such complaint shall not be subject to the renewal provisions of Code Section 9-2-61 after the expiration of the applicable period of limitation, unless a court determines that the plaintiff had the requisite affidavit within the time required by this Code section

101